[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12541
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cr-00406-WKW-SRW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SERGIO LVETTE DICKERSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(January 7, 2016)

Before TJOFLAT, HULL, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Sergio Dickerson appeals his 84-month sentence, imposed after being convicted of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  On appeal, Dickerson argues that the district court abused its discretion by rejecting the parties' plea agreement, which stipulated that Dickerson's sentence would not exceed 64 months' imprisonment.  After careful review of the record and briefs, we affirm.

## I.  BACKGROUND

### A.    Offense Conduct, Indictment, Plea Agreement, and Guilty Plea

On January 22, 2014, Dickerson was involved in a car accident.  Witnesses to the accident observed Dickerson remove a black gun case from his car, place it in a drainage ditch, and cover it with leaves.  Police officers found the gun case, which housed a semi-automatic pistol, an assault rifle, four magazines, one of which could hold 60 rounds, and over 125 rounds of various types of ammunition.  Officers checked Dickerson's criminal history and discovered that he had a 2008 felony robbery conviction.

A federal grand jury indicted Dickerson on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  On November 21, 2014, Dickerson and the government executed a written plea agreement pursuant to Rules 11(c)(1)(A) and (C) of the Federal Rules of Criminal Procedure.  The plea agreement provided that Dickerson would plead guilty to the one count in the

2

indictment and the government agreed that Dickerson's sentence would not exceed 64 months' imprisonment.  The plea agreement also provided that, "if the terms of the Plea Agreement [were] not accepted by the [district court], [Dickerson would] be allowed to withdraw [his] plea of guilty and proceed to trial."  Moreover, "[Dickerson] underst[ood] and acknowledge[d] that, although the parties [were] permitted to make recommendations and present arguments to the [district court], the sentence and the sentencing guidelines . . . [would] be determined solely by the [district court].

In a November 25, 2014 order, the magistrate judge accepted Dickerson's guilty plea, adjudicated him guilty, and scheduled Dickerson's sentencing for March 18, 2015.

## B.    Sentencing Guidelines Calculations

The presentence investigation report ("PSI") recommended a base offense level of 26, pursuant to U.S.S.G. § 2K2.1(a)(1).  After a three-level reduction for acceptance of responsibility, Dickerson's adjusted offense level was 23.  Based on a total offense level of 23 and a criminal history category of V, Dickerson's advisory guidelines range was 84 to 105 months' imprisonment.  The probation officer noted that the parties' written plea agreement provided for a sentence not to exceed 64 months' imprisonment.  Accordingly, acceptance of the plea agreement

3

would require a downward variance or departure from the applicable advisory guidelines range.

## C.    Dickerson's Criminal History

Dickerson's criminal history began in 2007, when he was 16 years old, with a first degree theft of property conviction, sustained after he and an accomplice stole $3,245 worth of parts off of a car.  On January 6, 2008, Dickerson held up a woman at gunpoint and stole her car.  Three days later, on January 9, 2008, Dickerson forced his way into a man's residence with a gun and stole a wallet, a rifle, and several electronics.  Dickerson ultimately sustained a first degree robbery conviction for the January 6 crime, for which he was sentenced to 20 years' imprisonment, and a second degree robbery conviction for the January 9 crime, for which he was sentenced to 17 years' imprisonment to run concurrent to the 20-year sentence.

On February 28, 2012, Dickerson was released from Alabama state prison at the age of 20.  Approximately one year later, on March 12, 2013, Dickerson was arrested for providing a false name to a police officer during a traffic stop and, the next day, was convicted of providing a false name to law enforcement.  One week later, on March 19, 2013, Dickerson was arrested for attempting to flee from a police officer during a traffic stop and, the next day, was convicted of attempting to elude.

4

On January 11, 2014, Dickerson stole over $200 worth of merchandise from a department store and attempted to return the stolen merchandise for a gift card. For that, Dickerson sustained a third degree theft-of-property conviction. On June 9, 2014, police were dispatched to a gas station regarding a domestic dispute between Dickerson and a woman. The woman was trying to leave the gas station but Dickerson prevented her from doing so by grabbing her arm. When the police arrived, Dickerson provided them with a false name, a false birthday, and a false social security number. For that, Dickerson sustained another conviction for providing a false name to law enforcement.

### D.    Prison Conduct and Pending Charge

Prior to his sentencing for the instant offense, Dickerson had sustained 15 disciplinary sanctions while incarcerated for engaging in prohibited behaviors such as fighting without a weapon, failing to obey orders, possessing contraband, and testing positive for marijuana use. Additionally, at the time of sentencing, Dickerson faced a pending charge relating to his 2014 arrest for possession of Oxycodone without a prescription.

### E.    Mitigation Evidence

Dickerson submitted a sentencing memorandum arguing that the 18 U.S.C. § 3553(a) factors supported a downward variance. According to Dickerson, the only life he had known was a life of crime, as he was surrounded by drugs and

crime since birth.  Dickerson asserted that he had an extensive criminal background because crime was all that he knew.  Dickerson also began using drugs and alcohol as a young teenager and, as a result, suffered from substance abuse problems that contributed to his criminal record.

Dickerson also explained that, at the time of the 2014 offense conduct here, he was living with his girlfriend, their child, and her child from a prior relationship in a neighborhood surrounded by crime and poverty.  Their house was subject to numerous break-ins and Dickerson received numerous threats, including death threats, from violent individuals from his past.  Accordingly, Dickerson acquired the weapons found in the gun case to protect his family.  He stored the weapons in his car to keep them away from the children.

Dickerson also submitted a supplemental sentencing memorandum that contained an allocution statement addressing the § 3553(a) factors and a forensic psychological evaluation, performed by Dr. Catherine Boyer.  According to Dr. Boyer, Dickerson exhibited symptoms of depression and post-traumatic stress disorder ("PTSD").  Dickerson's PTSD began after witnessing domestic violence at a young age, and worsened in 2007, when he witnessed the murder of his older half-brother, with whom Dickerson had a close relationship.  Dickerson also had a significant substance abuse problem.  Dr. Boyer noted that Dickerson was not a

6

"characteristically [] violent individual" and that he exhibited signs of "rehabilitative potential."

## F.    District Court's Rejection of Plea Agreement

On March 17, 2015, the day before Dickerson's scheduled sentencing hearing, the district court filed a notice of its intent to reject the parties' plea agreement.  The district court noted that, pursuant to Rule 11(c)(5)(B), it was not required to follow the plea agreement.  The district court then advised Dickerson that he may withdraw his plea of guilty and that, if the plea was not withdrawn, the court may dispose of his case less favorably than the plea agreement contemplated.

On March 18, 2015, at Dickerson's originally scheduled sentencing hearing, the district court iterated that it intended to reject the plea agreement, as it could not agree to be bound by its terms regarding the 64-month maximum sentence in light of Dickerson's extensive criminal history.  The district court continued the sentencing hearing and ordered Dickerson to file a statement regarding his intent to either withdraw his plea of guilty or proceed to sentencing.  Dickerson subsequently notified the district court that he wished to proceed with sentencing.

## G.    Sentencing

On May 21, 2015, the district court conducted Dickerson's sentencing hearing.  The district court first solicited objections to the PSI and, there being none, the court adopted the PSI's advisory guidelines calculations.  The district

court then noted that it had read all of Dickerson's submissions, including Dr. Boyer's report, and had considered them.  Dickerson's counsel noted that he had a certificate of completion for an anger management course, and that Dickerson's family was there, many of whom had written letters.  The district court noted that it had those letters.

Dickerson's counsel then emphasized certain highlights from each of Dickerson's sentencing memoranda.  Dickerson's childhood was traumatic, as he bore witness to domestic violence, drug use, and the murder of his brother.  Dickerson grew up poor, surrounded by crime and violence, and those living conditions persisted until the time of the offense conduct.  Dickerson explained that this was why he carried firearms, as he was trying to protect his family.  Dickerson personally addressed the district court and apologized.  Dickerson stated that he just wanted to protect his family and never had any intention of hurting anybody.

The district court noted that it had never seen a 23-year-old with a criminal history category of V, and that Dickerson's criminal history at such a young age "sp[oke] volumes."  As such, the district court stated that it "could not accept [the] plea agreement because of [Dickerson's] criminal history at the age of 23."  Moreover, the district court was "really disturbed" that Dickerson received 15 disciplinary sanctions while in prison.  And while the district court acknowledged

Dickerson's hardships and sympathized with him, it also stated that Dickerson did not need an assault rifle with a 60-round clip to protect his home.

Having considered and consulted the advisory sentencing guidelines, and having evaluated the reasonableness of the sentence under 18 U.S.C. § 3553(a), which included consideration of all of Dickerson's mitigating evidence, the district court sentenced Dickerson to 84 months' imprisonment, the bottom end of Dickerson's advisory guidelines range.  The district court imposed a bottom-range sentence because Dickerson was still young and the court wanted to see him succeed.

## II.  DISCUSSION

We review a district court's rejection of a plea agreement for abuse of discretion.  See United States v. Bean, 564 F.2d 700, 703-04 (5th Cir. 1977).[1]

Under the Federal Rules of Criminal Procedure, "[a]n attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement [and] [t]he court must not participate in these discussions."  Fed. R. Crim. P. 11(c)(1).  "If the defendant pleads guilty . . ., the plea agreement may specify that an attorney for the government will[ ] agree that a specific sentence or sentencing range is the appropriate disposition of the case."  Fed. R. Crim. P. 11(c)(1)(C).  If the plea agreement is the type specified in Rule 11(c)(1)(C), "the

---

[1]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

court may accept the agreement, reject it, or defer a decision until the court has reviewed the [PSI]."  Fed. R. Crim. P. 11(c)(3)(A).[2]

A district court does not abuse its discretion when it rejects a plea agreement because the agreement will result in too lenient a sentence.  See Bean, 564 F.2d at 704 ("A decision that a plea bargain will result in the defendant's receiving too light a sentence under the circumstances of the case is a sound reason for a judge's refusing to accept the agreement.").

Here, we cannot say that the district court abused its discretion by rejecting the parties' plea agreement.  While we too sympathize with the numerous challenges Dickerson has faced in his life, he has a serious problem with the law and authority.  At the young age of 23, Dickerson had already attained an abnormally high category V criminal history and had received 15 prison disciplinary sanctions.  Moreover, the district court properly noted that Dickerson

---

[2]If the district court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(C), the court must:

> (A) inform the parties that the court rejects the plea agreement; (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

Fed. R. Crim. P. 11(c)(5)(A)-(C).  If the court rejects a defendant's plea agreement under Rule 11(c)(5), then the defendant may withdraw his guilty plea prior to sentencing and proceed to trial.  Fed. R. Crim. P. 11(d)(2)(A).  Nothing in the record suggests that the district court failed to follow these procedural requirements.

10

unlawfully possessed not just any firearm, but an assault rifle with a 60-round capacity magazine.

Based on Dickerson's lengthy criminal history, his disciplinary problems in prison, and the seriousness of his present offense, the district court believed that adhering to the plea agreement's 64-month sentence cap—which would have been tantamount to a 20-month downward variance from the bottom end of Dickerson's advisory guidelines range—would have yielded too lenient a sentence. Because the plea agreement provided too lenient a sentence, the district court rejected the plea agreement pursuant to Rule 11(c)(3)(A). This does not constitute an abuse of discretion. See id. Accordingly, we must affirm.

**AFFIRMED.**